# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

JOSEPH E. SCHRUMP,

    Petitioner,

    v.

WARDEN MARGARET CHIPPENDALE,

    Respondent.

Civil Action No. TDC-21-2649

## MEMORANDUM OPINION

Petitioner Joseph E. Schrump, a state prisoner confined at the Dorsey Run Correctional Facility in Jessup, Maryland, has filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in which he collaterally attacks his 2017 conviction for first-degree assault. The Petition is fully briefed. Upon review of the submitted materials, the Court finds no need for an evidentiary hearing. *See* Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts; D. Md. Local R. 105.6. For the reasons set forth below, the Petition will be DENIED.

## BACKGROUND

### I.    Conviction and Sentence

On July 28, 2017, Schrump was charged in the Circuit Court for Anne Arundel County, Maryland with attempted first-degree murder, attempted second-degree murder, first-degree assault, second-degree assault, and reckless endangerment arising from a June 29, 2017 incident in which he allegedly assaulted his mother, Gwendolyn Locklear. On December 7, 2017, Schrump entered a plea to first-degree assault pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970), under which he did not admit guilt but accepted a guilty finding based on facts sufficient to support

a conviction. *Id.* at 37. As stated at the time of his plea, the facts underlying the conviction included that Schrump punched Locklear in the face multiple times, that he pressed a pillow into her face for approximately three minutes to suffocate her, that when she eluded him, he dragged her back into the house and threw her onto a concrete floor, and that he punched her again in the face until Schrump's girlfriend intervened.

During the plea hearing, Schrump was asked if he was under the influence of any alcohol, drugs, or prescribed medications. Schrump answered that he was taking Trileptal, a mood stabilizer prescribed for bipolar disorder. When asked if he was "thinking clearly" at that time, Schrump answered, "Yes." Plea & Sentencing Hrg. Tr. at 7, ECF No. 11-1. When asked he had "any other mental illness condition" of which the court should be aware other than the mood stabilization issue, Schrump stated, "No." *Id.* at 8. After Schrump affirmed that he understood the consequences of the plea and was knowingly and voluntarily waiving his right to a jury trial, the court found Schrump guilty of first-degree assault. On the remaining charges, a *nolle prosequi* was entered.

Sentencing occurred at the same hearing. Prior to the imposition of sentence, Schrump's trial counsel argued that there were mitigating factors, including that Schrump's mother was drunk and argumentative at the time of the assault and likely had an alcohol problem, that she had told Schrump that he should kill himself, and that Schrump had been removed from her care as a child due to physical abuse. Trial counsel also asserted that Schrump had a substance abuse problem and was abusing Xanax and alcohol at the time of this offense. Having considered these arguments, the court sentenced Schrump to a term of imprisonment of 25 years, with all but 10 years suspended, followed by three years of probation.

2

## II.     Post-Conviction Proceedings

On March 6, 2020, Schrump filed a self-represented state petition for post-conviction relief in the Circuit Court for Anne Arundel County. On June 17, 2021, the court held a post-conviction hearing at which Schrump was represented by counsel. Schrump's post-conviction counsel stated that his state petition was based on claims of ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution, specifically that (1) his trial counsel did not investigate his competency; (2) his trial counsel did not investigate his psychological state of mind or psychological disorders at the time of the crime; and (3) his trial counsel lied to him and provided "mis-advice" in relation to the decision to enter his plea. Post-Conviction Hrg. Tr. at 8, ECF No. 11-2.

At the post-conviction hearing, Schrump testified that he originally planned to go to trial, but that he changed his mind because his trial counsel told him that the victim, Locklear; Schrump's ex-girlfriend, Sherri Allred; the victim's neighbor, Ashley Fish; and Schrump's sister, Porscha Jacobs, would be coming to court to testify for the State. Schrump claimed that he never reviewed the "discovery" in his case and did not review the report prepared by defense counsel's investigator until after the plea hearing. *Id.* at 15–16. However, he testified that had he seen the investigative report, he would not have entered an *Alford* plea because his mother's statement to the investigator differed from the account she gave to the police. He further testified that several months after the plea hearing, his mother assured him during a phone conversation that she had had no intention of testifying against him and that she had told the investigator that she was not going to testify. Schrump's post-conviction counsel introduced a copy of the subpoena for Locklear that was not returned, suggesting that Locklear would not have appeared for trial.

At the post-conviction hearing, the State called Schrump's trial counsel, Heather Tierney, as a witness. Tierney testified that although she was aware that Schrump believed that his family members would not testify, in her experience, criminal defendants often believe that family members will not testify against them and therefore do not want to accept a plea agreement. She therefore had an investigator interview all of the witnesses, and they all described the assault to the investigator and signed statements providing their accounts. As to Locklear, Tierney specifically sent her investigator to interview her because she did not know if Locklear was being cooperative with the State. The investigator's report stated in relevant part that Locklear would "be a credible and sympathetic witness" and that she was "aware of the court date and will testify against Schrump." *Id.* at 35. Tierney therefore believed that the witnesses were going to testify at trial and would testify favorably to the State's case. Although Tierney was asked on cross examination if she knew that Locklear had not actually been served with a trial subpoena, she testified that that fact would not have made a difference to her because it was her experience that the State often subpoenaed witnesses at the last minute. She was aware that Locklear still lived at the address where the altercation took place and thus could have been served. She therefore tried to get Schrump the best plea offer she could.

In Tierney's view, Schrump's plea deal was "an excellent deal" because it included an agreement to resolve the related probation violation without additional prison time, where that case carried a possible sentence of seven and a half years and would have been resolved by a judge with a reputation for being difficult on probation violation matters. *Id.* at 41. Tierney also believed that the presiding judge at the plea hearing would be sympathetic to the mitigating evidence presented.

As for competency and psychological issues, Tierney testified that she recognized her obligation to raise competency whenever there is a basis to question it, but that in Schrump's case,

she never had any concern about his competency, such as when a defendant does not understand the nature of a proceeding or is not able to assist in his defense. Tierney also testified that while "there was probably drugs and alcohol involved," such impairment did not provide a basis to assert a defense of not criminally responsible, and she had no information that would support such a defense. *Id.* at 43–44. Tierney also testified that had Schrump insisted on going to trial, she would have followed those wishes.

On June 23, 2021, after assessing Schrump's ineffective assistance of counsel claims under the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), the court denied Schrump's state post-conviction petition. As to Schrump's claims that his trial counsel failed to investigate his competency, the court credited Tierney's testimony that she did not have information that would cause her to be concerned about Schrump's competency at the time of his plea hearing. The court further found that Schrump had offered no testimony or evidence regarding his competency at the time of his plea hearing and instead relied on Schrump's statement during the plea hearing that he was "thinking clearly that day," Plea & Sentencing Hrg. Tr. at 7–8, even while acknowledging that he was on prescription mood stabilization medication, his statement that he had no other mental health conditions that should be considered, and the trial judge's finding that he had knowingly and voluntarily entered his plea. The court therefore found that trial counsel's performance was not deficient when she did not pursue a competency evaluation.

As for whether trial counsel acted deficiently in not considering Schrump's "psychological state of mind" or psychiatric disorders at the time of the offense, State Record ("S.R.") 27–28, ECF No. 5-1, the court credited trial counsel's testimony that she had no information supporting a defense of not criminally responsible. The court also found that Schrump had provided no evidence at the post-conviction hearing relating to his psychological state of mind. While trial

5

counsel had discussed Schrump's childhood trauma and his use of prescription mood stabilizers as mitigating factors at sentencing, the court noted that Schrump did not offer any additional information on his psychological condition when he had the opportunity to speak at sentencing. The court therefore found no deficient performance relating to trial counsel's alleged failure to consider Schrump's psychological state of mind or psychiatric disorders.

On Schrump's claim that his trial counsel lied to him and did not advise him properly with respect to entering his plea, the court also found no deficient performance. The court found that there was no evidence that Tierney had lied to Schrump about whether Locklear would testify. Rather, the court credited Tierney's testimony that she had sent an investigator to interview the witnesses, and that the investigator had reported that Locklear, as well as the other witnesses, would appear to testify. The court also noted that even if she were not cooperative, Locklear could have been subpoenaed for trial, and she had provided a signed statement which could have been used to impeach her if she deviated from her prior account. The court therefore found no deficiency in Tierney's statements to Schrump that she believed that Locklear and the other witnesses would testify at trial.

More broadly, the court found no deficiency in Tierney's recommendation that Schrump accept the plea offer. The court noted that Schrump was charged with "attempted first-degree murder, which carries a maximum sentence of life in prison," and that the plea offer limited his sentence to 10 years of active incarceration with no additional time on the probation violation, which could have added another seven and half years. S.R. 29. In light of the number of witnesses who had given signed, written statements to the police and could testify at trial, the court found no deficiency in trial counsel's advice to Schrump on the "desirability of the plea offer." *Id.*

6

On July 26, 2021, Schrump filed an application for leave to appeal the denial of post-conviction relief with the Court of Special Appeals of Maryland. On October 1, 2021, the application was summarily denied. Schrump did not seek further appellate review.

**III.   Procedural History**

On October 9, 2021, Schrump filed his Petition for a Writ of Habeas Corpus with this Court. Initially, Respondent filed a Limited Answer asserting that the Petition is time-barred because a Motion for Modification of the Sentence filed by Schrump was a mere placeholder and thus did not toll the one-year statutory filing period. On February 7, 2022, the Court issued a memorandum order finding that the Petition was timely filed and directing Respondent to file a Supplemental Answer. Respondent then filed a Supplemental Answer asserting that the state post-conviction court did not err when it found that Schrump's ineffective assistance of counsel claims lacked merit.

## DISCUSSION

In the Petition, Schrump asserts four claims of ineffective assistance of counsel. Specifically, he argues that his trial counsel (1) failed to investigate Schrump's mental health issues in order to advance a challenge to his competency; (2) failed to inform the court of all of Schrump's mental health conditions; (3) incorrectly advised Schrump that the victim would be testifying at trial, which in turn caused him to accept the *Alford* plea; and (4) lied to Schrump about whether the State had issued a subpoena for the victim's presence at trial, and whether the victim's account was consistent with those of other witnesses, which also caused him to accept the plea.

Schrump also claims that at the time he entered his plea, he was "taking strong antipsychotics." Pet. at 5, ECF No. 1. To the extent that this claim seeks to challenge the voluntariness of the plea, it is procedurally defaulted because Schrump did not assert it in his state

petition for post-conviction relief. *See Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (holding

that a procedural default occurs "when a habeas prisoner fails to exhaust available state remedies

and the court to which the petitioner would be required to present his claims in order to meet the

exhaustion requirement would now find the claims procedurally barred"). To the extent that this

claim relates to Schrump's claim in his state petition for post-conviction relief that his trial counsel

rendered ineffective assistance of counsel by failing to consider his state of mind at the time of the

offense, which might have led to a defense that he was not criminally responsible, the Court will

consider it along with the other ineffective assistance of counsel claims.

## I.    Legal Standards

### A.    Habeas Review

A federal petition for a writ of habeas corpus may be granted only for violations of the

Constitution or laws of the United States. 28 U.S.C. § 2254(a) (2018). The federal habeas statute

sets forth a highly deferential standard for evaluating state court rulings, under which state court

decisions are to "be given the benefit of the doubt." *Bell v. Cone,* 543 U.S. 447, 455 (2005); *see*

*Lindh v. Murphy,* 521 U.S. 320, 333 n.7 (1997). A federal court may not grant a writ of habeas

corpus unless the state court's adjudication on the merits (1) resulted in a decision that was contrary

to, or involved an unreasonable application of, clearly established federal law, as determined by

the United States Supreme Court; or (2) resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the state court proceeding. 28

U.S.C. § 2254(d). A state court adjudication is contrary to clearly established federal law under §

2254(d) when the state court (1) "arrives at a conclusion opposite to that reached by [the Supreme]

Court on a question of law"; or (2) "confronts facts that are materially indistinguishable from a

relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court's]."

*Williams v. Taylor*, 529 U.S. 362, 405 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S 766, 773 (2010) (quoting *Williams*, 529 U.S. at 411). The state court's application of federal law must be "objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409).

Under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The fact that "reasonable minds reviewing the record might disagree about the finding in question" is not enough to deem a state court's factual determination unreasonable. *Id.* (citation omitted). Rather, a state court's factual determinations are presumed correct, and a petitioner who brings a habeas petition in federal court must rebut facts relied upon by the state court with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). More specifically, "for a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear." *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)).

### B.    Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const. amend. VI. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court held

that to prevail on a claim of ineffective assistance of counsel, a petitioner must establish two prongs: deficient performance and prejudice. *Id.* at 692. First, the petitioner must show that counsel's performance was deficient in that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Deficiency exists when "counsel's representation fell below an objective standard of reasonableness" under "prevailing professional norms." *Id.* at 688; *see Wiggins v. Smith*, 539 U.S. 510, 521 (2003). "Judicial scrutiny of counsel's performance must be highly deferential" and apply "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

Second, the petitioner must show prejudice in that the deficient performance by counsel consisted of errors that "were so serious as to deprive the defendant of a fair trial" whose result was reliable. *Id.* at 687. To establish such prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" is one "sufficient to undermine confidence in the outcome." *Id.* A petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

"[C]laims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland*." *Missouri v. Frye*, 566 U.S. 134, 140 (2012). In the

10

context of such a claim, to establish prejudice, a petitioner must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

The *Strickland* and § 2254(d) standards are both highly deferential and "when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). In the § 2254(d) context, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

## II. Competency and Psychological Issues

The Court considers together Schrump's related claims that his trial counsel provided ineffective assistance of counsel when she did not investigate his mental health conditions in order to challenge his competency, she did not consider that he was taking anti-psychotic medication at the time of his plea, and she did not consider or fully explain to the court his mental health conditions at the time of the crime. The post-conviction court, however, credited trial counsel's testimony that there was no basis upon which she should have pursued a challenge to Schrump's competency or to pursue a defense of not criminally responsible, and that Schrump had not provided any evidence on these points. Upon review of the record, the Court finds that these determinations were reasonable. *See* 28 U.S.C. § 2254(d)(2).

Further, the transcript of the plea and sentencing hearing refutes Schrump's claim that he was taking anti-psychotic medication that could have impacted the plea, as he testified that he was "thinking clearly" even while taking his mood stabilization medication, Plea & Sentencing Hrg. Tr. at 7, he did not identify any other mental health conditions even when asked by the judge, and the judge specifically found that Schrump had knowingly and voluntarily waived his rights and

11

entered his plea. Where Schrump did not identify any additional mental health conditions, and trial counsel, in fact, discussed potential mitigating circumstances with Schrump and his friend before sentencing and sought leniency based on his childhood trauma, his mood stabilization issues, and his drug and alcohol problems, trial counsel did not render deficient performance based on any failure to assert arguments relating to his mental health condition at the time of the offense. Because the post-conviction court's findings and conclusions do not amount to an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts, the Petition will be denied as to the claims relating to his mental health conditions.

**III.     Plea Decision**

The Court also finds that the post-conviction court's finding that trial counsel did not act deficiently when providing information and advice on the decision to accept the plea agreement was not an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts. Although Schrump claims that his trial counsel lied to him when stating that the victim, Locklear, would testify against him, the post-conviction court rejected that claim based on Tierney's testimony that her investigator had informed her that Locklear, as well as the other witnesses, were prepared to testify against him. Even if Locklear did not wish to testify against Schrump, the post-conviction court correctly found that she could have been compelled to do so. Although Schrump focuses on the fact that a subpoena for Locklear had been issued but not served, the post-conviction court relied on trial counsel's testimony that the State frequently does not subpoena witnesses until shortly before trial, so that fact did not demonstrate that she would not testify.

As for Schrump's claim that he later learned that Locklear's statement to the investigator differed from the statement she gave to the police and the statements of other witnesses, he has not identified any specific material differences that would render inaccurate trial counsel's alleged statement that the witnesses were all saying the same thing. Even if there were discrepancies, the post-conviction court reasonably concluded that with the presence of multiple eyewitnesses to the assault, Tierney's advice to Schrump to accept the plea offer was not deficient performance, particularly considering that by doing so Schrump would avoid any additional time, which could have been over seven years, for the probation violation. Thus, upon consideration of the record, the Court finds that the post-conviction court's findings that trial counsel did not lie to Schrump, and that her advice to accept the plea offer was not deficient, were not an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts. The Petition will therefore be denied on these claims as well.

**IV.    Certificate of Appealability**

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant" on a § 2254 petition. Because the accompanying Order is a final order adverse to the applicant, Schrump must receive a certificate of appealability before an appeal may proceed. 28 U.S.C. § 2253(c)(1).

A certificate of appealability may issue if the prisoner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court rejects constitutional claims on the merits, a petitioner satisfies the standard by demonstrating that "jurists of reason could disagree with the district court's resolution of [the] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed

13

further." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)). Schrump's claims are dismissed on the merits. Upon review of the record, this Court finds that Schrump has not made the requisite showing. The Court therefore declines to issue a certificate of appealability. Schrump may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See* Fed. R. App. P. 22(b).

## CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas Corpus, ECF No. 1, will be DENIED. The Court declines to issue a certificate of appealability. A separate Order shall issue.

Date:  October 26, 2022

THEODORE D. CHUANG
United States District Judge

14